ORIGINAL

USDC-NY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/24/23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MONICA LOVO, as Personal Representative of the Estate of Charles D. Scales,

            Plaintiff,

  - against -

INVESTIS DIGITAL INC. (f/k/a Investis Inc.) and TRINET HR III, INC.,

           Defendants.

---

23 Civ. 1868 (LLS)

OPINION & ORDER

    The present case arises from two agreements Charles D. Scales entered with defendant Investis Digital Inc. ("Investis"), the second of which stated that Scales would be entitled to participate in employee benefit plans, including a life insurance plan, as part of his employment compensation. However, Scales was ultimately denied life insurance coverage and died soon after receiving news of that denial. His estate never received any form of life insurance following his death. Plaintiff Monica Lovo,[1] the personal representative of Scales'

---

[1] The original plaintiff in this case was John Glassman, acting as the personal representative of Scales' estate. On September 21, 2023, Monica Lovo was appointed to be the personal representative of Scales' estate. On October 16, 2023, Lovo was

1

estate, now brings claims under the Employee Retirement Income Security Act ("ERISA") against Investis and TriNet HR III ("TriNet"), the alleged administrator of Investis' employee benefits. Lovo also brings claims for common law breach of contract and equitable estoppel against Investis. Investis and TriNet each moved to dismiss the Complaint for failure to state a claim. For the following reasons, the Complaint is dismissed for lack of subject matter jurisdiction.

**Facts**

The following facts are drawn from the Complaint and accepted as true for the consideration of the Motions to Dismiss.

On February 29, 2016, Investis (then known as Investis, Inc.) hired Scales to serve as "CEO US." The Complaint ("Comp.") at ¶ 13. On that date, Investis and Scales entered into an agreement (the "Employment Agreement"), which provided Scales with a yearly base salary of $350,000, a bonus plan, and benefits that were laid out in Section Four of the Employment Agreement, which stated "Benefits: With immediate effect of [sic] your start date, you shall be entitled to participate in all employee benefit plans of the Company from time-to-time in effect, subject to and in accordance with the rules of such

---

substituted for Glassman as the plaintiff in this case. (Dkt. No. 29).

plans. The following plans are stated in the following:" Id. at ¶ 14, Investis Motion to Dismiss ("Investis MTD") Exhibit A (Dkt. No. 14). The Employment Agreement then lists vacation, medical cover, 401(K), day care, and commuter benefits. Id. Life insurance was not included in that list of plans. Comp. at ¶ 15.

In January 2017, Scales was promoted from "CEO US" to "Global CEO." Id. at ¶ 16. In March 2021, Investis Corp. purchased Investis Inc., and changed the company's name to Investis Digital. Id. at ¶17. On April 7, 2021, Scales signed an amendment to the Employment Agreement (the "Amended Agreement"). Investis MTD Exhibit A. The Amended Agreement increased Scales' base salary to $459,000, decreased the maximum allowed bonus, and amended Section Four of the Employment Agreement. Comp. at ¶ 21. The Amended Agreement states in relevant part:

> Section 4 of the Employment Agreement is amended to add the following to the end thereof. For the avoidance of doubt and save as provided in clause 3 of this First Amendment (see above),[2] the existing provisions in section 4 shall be unaffected by the below additions which shall apply alongside them:
>
> Life Insurance – Life insurance benefit of five (5) times the base salary.
> Investis MTD, Exhibit B. Essentially, the Amended Agreement

extended the list of employee benefit plans Scales would be entitled to participate in to include life insurance. Life

---

[2] Clause three amends the vacation and commuter benefits provided in the Employment Agreement.

3

insurance plans were not broadly available to Investis employees; they were only offered to Scales and two other executives as inducement to continue working at Investis after the March 2021 change of ownership. Comp at ¶ 25. Life insurance was important to Scales, who was in his mid-60s, weighed 300 pounds, and suffered from atrial fibrillation, which made obtaining life insurance difficult. Id. at ¶ 24.

After the Amended Agreement was executed, Investis undertook to obtain this life insurance on Scales' behalf from Metropolitan Insurance ("Met Life"), a third-party insurer. Id. at ¶ 31. TriNet, the alleged administrator of Investis' benefits and co-employer of Investis Digital employees, then informed Investis that Met Life required individuals to complete a statement of health to qualify for life insurance at the rate of five times Scales' salary. Id. at ¶¶ 12, 31. Scales completed the statement of health and a medical evaluation but received notice that Met Life had denied him life insurance in August 2021. Id. at ¶¶ 32, 37. Scales passed away on September 5, 2021 before he could appeal that denial. Id. at ¶ 38. Despite requests for life insurance from Scales' estate, Investis has not paid any form of life insurance to Scales' estate. Id. at ¶ 40.

The Complaint alleges that both Investis and TriNet (together "defendants") knew that Scales could have obtained

4

life insurance for three times the amount of his salary without completing a statement of health, and that Investis gave that life insurance option to the other two executives who received life insurance following Scales' death. Id. at ¶ 41. The Complaint alleges that Investis' failure to pay the Scales' estate life insurance violates ERISA and defendants' failure to adequately disclose the option for life insurance in the amount of three times his salary deprived Scales of his life insurance benefit. Id. at ¶¶ 57-58.[3]

Lovo, on behalf of the Scales estate, now brings ERISA claims for denial of benefits, promissory estoppel, breach of fiduciary duty surcharge, breach of fiduciary duty equitable estoppel, and attorneys' fees under 29 U.S.C. §§ 1132(a)(1)(B), 1132(a)(3), 1132(g); and breach of contract and equitable estoppel claims under common law against Investis. Lovo brings the ERISA denial of benefits, breach of fiduciary duty surcharge, and attorneys' fees against TriNet.[4]

---

[3] Trinet argues the Complaint alleges that only Investis, and not Trinet, failed to inform Scales of the different life insurance options. The Complaint alleges that "Defendants" failed to take such action. Although the Complaint fails to define "Defendants," when read in the light most favorable to Lovo, allegations against "Defendants" are allegations against both Trinet and Investis.

[4] Lovo originally also brought all the ERISA equitable claims alleged against Investis against TriNet. In Lovo's Opposition to TriNet's Motion to Dismiss ("Opp. to TriNet MTD") (Dkt. No. 24), Lovo dropped the equitable claims for promissory estoppel and

5

In Lovo's oppositions to the motions to dismiss filed by TriNet and Investis, Lovo clarifies that the ERISA claims are brought pursuant to the Employment Agreement and the Amended Agreement (together the "Agreements"), and not pursuant to the denied Met Life life insurance plan. Opp. to TriNet MTD at 4.

### Discussion

As "it is a fundamental precept that federal courts are courts of limited jurisdiction," Court must first inquire into its subject matter jurisdiction to adjudicate the present case. Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc., 943 F.3d 613, 616 (2d Cir. 2019). If the Court determines at any time that it lacks subject matter jurisdiction, Federal Rule of Civil Procedure 12(h)(3) requires the Court to dismiss the case.

For litigation of routine commercial disputes, there are two "basic statutory grants of federal-court subject-matter jurisdiction": federal question jurisdiction, which arises when a plaintiff pleads a claim arising under the Constitution or laws of the United States, and diversity jurisdiction, which arises when the suit is between "citizens of different States" and the amount in controversy exceeds $75,000. 28 U.S.C. §§

---

fiduciary duty equitable estoppel against TriNet. Opp. to TriNet MTD at 13-14.

1331, 1132(a); Arbaugh v. Y&H Corp., 546 U.S. 500, 513 (2006). "It is well-settled that the party asserting federal jurisdiction bears the burden of establishing jurisdiction." Platinum-Montaur, 943 F.3d at 617. To determine whether subject matter jurisdiction exists, the Court may consider information not included in the pleadings, such as the Agreements. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

I.   Federal Question Jurisdiction

When a plaintiff invokes federal question jurisdiction under ERISA to recover for an improper denial of benefits, "it is not only proper but necessary for a district court to satisfy itself that ERISA applies to the at-issue benefits plan in such a case, because it is ERISA that provides the jurisdictional basis to address the plaintiff's claims." Arnold v. Lucks, 392 F.3d 512, 517 (2d Cir. 2004); see also e.g., Schonholz v. Long Island Jewish Med. Ctr., 87 F.3d 72, 76 (2d Cir. 1996) ("it is plain that ERISA subject matter jurisdiction depends upon the need for an administrative program."); Davis v. Com. Bank of New York, 275 F. Supp. 2d 418, 424 (S.D.N.Y. 2003). If the plan under which Scales was allegedly denied benefits is not an ERISA plan, then this Court does not have federal question jurisdiction over it. Berkery v. Archdiocese of Hartford, 2007

7

WL 9719260, at *3 (D. Conn. June 28, 2007), aff'd, 352 F. App'x 487 (2d Cir. 2009).

Lovo argues that the Agreements are an ERISA plan because they entitled Scales to life insurance in the amount of five times his base salary. But not every agreement by an employer to provide benefits to an employee constitutes an ERISA plan. Okun v. Montefiore Med. Ctr., 793 F.3d 277, 279 (2d Cir. 2015) (citing Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 8 (1987)). An employer's agreement to provide benefits to an employee is an ERISA plan "only where such an undertaking or obligation requires the creation of an ongoing administrative program" to meet the employer's obligation. Schonholz., 87 F.3d at 75 (citing Fort Halifax, 482 U.S. at 12). For example, in Fort Halifax, the Supreme Court found that a Maine statute that required employers to make a one-time severance payment to employees did not create an ERISA plan because "the requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation." 482 U.S. at 12.

To determine whether that ongoing scheme exists, courts in the Second Circuit evaluate a variety of factors, including, but not limited to, (1) "whether the employer's undertaking or obligation requires managerial discretion in its administration," (2) "whether a reasonable employee would

perceive an ongoing commitment by the employer to provide employee benefits;" and (3) "whether the employer was required to analyze the circumstances of each employee's termination separately in light of certain criteria." Schonholz, 87 F.3d at 76 (internal citations omitted). The third factor is not applicable here as the Agreements do not concern an employee's termination. Opp. to TriNet MTD at 6.

Applying the factors here, the Agreements do not create an ERISA plan. First, the Agreements do not require managerial discretion to execute. The Agreements state that Scales will be entitled to participate in benefit programs, subject to the terms of those plans, as part of his employment. Executing the Agreements requires only a "clerical determination," "involving a ministerial task;" it is not a task that requires a review and determination for each individual circumstance. See Fort Halifax, 482 U.S. at 12.

The second factor, whether a reasonable employee perceives an ongoing commitment to provide benefits, cuts both ways. A reasonable employee might perceive the entitlement to participate in a life insurance plan as a promise by Investis to continually provide that benefit. But a promise to obtain life insurance on Scales' behalf is not the same as providing life insurance, and the Agreements contain

9

none of the provisions which normally attend that
creation and maintenance of an ERISA plan. The
Agreement contains no administrative scheme for
regulation and administration of plan funds. It names
no fiduciaries to control or manage the operations and
administration of funds to be paid out under its
terms. It further makes no arrangement for placing any
assets in trust. In addition, the plan fails to
require plaintiff to contribute to any fund that would
serve as the source of accrued benefits, or to specify
the basis on which plaintiff's deferred contributions
were to be made.

Laverty v. Savoy Indus., Inc., 954 F. Supp. 86, 90 (S.D.N.Y. 1997); see also Guilbert v. Gardner, 480 F.3d 140, 145-46 (2d Cir. 2007) ("In a case involving an alleged employee welfare benefit plan, this Court held that a plan, fund, or program under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.") (citations omitted). Lovo responds that some of that missing information can be inferred from the surrounding circumstances; however, that allegation was not included in the Complaint, and new facts cannot be proposed for the first time in an opposition to a motion to dismiss. E.g., Guo v. IBM 401(k) Plus Plan, 95 F. Supp. 3d 512, 526-27 (S.D.N.Y. 2015).

The gravamen of Lovo's claims is that Scales agreed to continue working with Investis—at least in part—due to the promise of life insurance and might not have continued his

employment with Investis had he known he would not receive life insurance. That complaint concerns the "terms of his employment rather than the administration of health benefits," Cotter v. Milly LLC, 2010 WL 286614, at *8 (S.D.N.Y. Jan. 22, 2010). "Those benefits may be provided pursuant to one or more ERISA plans," but courts have consistently held "that does not transform the Employment Agreement into an ERISA plan." E.g., Wharton v. Duke Realty, LLP, 467 F. Supp. 2d 381, 389-90 (S.D.N.Y. 2006) (citing 29 U.S.C. §§ 1002(1), 1002(2)) (collecting cases); Janover v. Bernan Foods, 901 F. Supp. 695, 699-700 (S.D.N.Y.1995) (An "employment contract that contains incidental provisions to induce continued employment is not a separate ERISA plan.").

Since there is no ERISA plan and the remaining claims do not arise under the Constitution or the laws of the United States, the Court does not have federal question jurisdiction over the case.

II.  Diversity Jurisdiction

The Complaint furnishes no basis to exercise diversity jurisdiction over this case because it does not adequately plead diversity of citizenship. "The Supreme Court has interpreted 'citizens of different States' to grant jurisdiction only 'if diversity of citizenship among the parties is complete, i.e., only if there is no plaintiff and no defendant who are citizens

11

of the same State.'" Platinum-Montaur, 943 F.3d at 617 (citations omitted).

The Complaint alleges that Scales was a New York resident, Investis is a corporation organized in Delaware and is registered to do business in New York, and TriNet is a corporation organized in California and registered to do business in New York. Comp. at ¶¶ 3, 5-7, 37. Corporations are citizens of the states in which they are incorporated and where they have their principal place of business. 28 U.S.C. § 1332(c). The Complaint does not affirmatively state where Investis and TriNet have their principal places of business, so the Court is unable to determine whether complete diversity exists and cannot exercise diversity jurisdiction over the matter. Platinum-Montaur, 943 F.3d at 617.

The Complaint is dismissed for lack of subject matter jurisdiction, with leave to amend. The dismissal is stayed until November 24, 2023, to allow plaintiff to plead diversity jurisdiction if the facts supply it.

The request for oral argument is denied.

So ordered.

Dated:   New York, New York

October 24, 2023

_Louis L. Stanton_
LOUIS L. STANTON
U.S.D.J.